UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KATHLEEN FURLONG                                                    Plaintiff

v.                                              Civil Action No. 3:18-CV-0075-RGJ-CHL

HALLMARK HOUSE OF LOUISVILLE II,                                   Defendant
LLC

* * * * *

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Hallmark House of Louisville, II's ("Hallmark House") Motion for Partial for Summary Judgment [DE 21]. Plaintiff Kathleen Furlong ("Furlong") responded to the Motion [DE 22], and Hallmark House submitted a Reply [DE 23]. This matter is ripe. For the reasons below, the Court **GRANTS** Hallmark House's Motion [DE 21].

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Hallmark House is an assisted living and residential personal care facility in Louisville, Kentucky. [DE 22–1 at 99]. Hallmark House provides care to seniors with Alzheimer's, dementia, or other memory deficits. [*Id.*]. Hallmark House employed Furlong, as a Caregiver, beginning on or about October 20, 2016, at which time Furlong was 60 years old. [*Id.*] In January 2017, Furlong was promoted to Activities Director and was responsible for planning and facilitating daily activities and games for Hallmark House's residents. [*Id.*]

Furlong testified that she became aware on September 15, 2017 that the Director of Nursing, Kathie Quaife ("Quaife"), was planning to give medication prescribed to one resident to

1

another resident.  [DE 22 at 162, DE 22–1 at 171].[1]  Furlong reported this to the Administrator, Jennifer Ash ("Ash").  [DE 22 at 162, DE 22–1 at 171].  On September 18, 2017, a meeting was held between Furlong, Ash, Quaife, Vanessa Flannery ("Flannery"), and Jim Few, to discuss the allegations, which Furlong tape recorded.  [DE 22 at 162–63, DE 22–1 at 172–73].  During the meeting Quaife acknowledged that if a resident was in dire need of a medication that they have a prescription for but not yet delivered, she will give another patient's medication if it is the same milligrams, then replace it.  [DE 22 at 163, DE 22–3 at 179].

The day after the meeting, on September 19, 2017, Furlong received a written-verbal warning for coming in late.  [DE 22 at 163, DE 22–1 at 174, DE 22–4].  She had received prior permission to be late by text message from her then-supervisor, Flannery.  [DE 22 at 163, DE 22–5].

On or about October 2, 2017, Flannery issued a disciplinary action for Furlong's failure to post an activities calendar and the two engaged in a verbal confrontation in which Flannery allegedly accused Furlong of having dementia and being stupid.  [DE 21 at 100, DE 22 at 163].  Hallmark House immediately reprimanded Flannery and removed her as Furlong's supervisor.  [DE 22 at 100, DE 21–3 at 131, DE 21–4 at 138].

On or about October 31, 2017, Furlong's employment was terminated.  [DE 21 at 102, DE 22 at 163].  Hallmark House states Furlong was not a good fit for the Activities Director position, citing Furlong's failure to timely post a monthly activities calendar, lack of creativity in selecting activities, and failure to maintain resident profiles.  [DE 21 at 106].  Hallmark House replaced Furlong with an employee who was 56 years old.  [DE 21 at 106, DE 21–4 at 139].

---

[1] Furlong's cited disposition testimony does not establish this date.  The date, however, does not appear to be in dispute.

Furlong filed this Complaint, alleging that Hallmark House wrongfully terminated her employment and retaliated against her because she reported safety concerns and because of her age. [Compl. 1–4, ¶¶ 17–44]. In Count 1 she alleges she was wrongfully terminated in violation of Kentucky common law and KRS § 216B.165. [DE 1–4 at 23–34]. In Count 2, Furlong alleges she was wrongfully terminated in violation of Kentucky common law and public policy. [*Id.* at 24–25]. In Count 3, Furlong alleges that her age was a substantial motivating factor in her termination and that Hallmark House unlawfully discriminated against her because of age in violation of KRS § 344.040.

## II.     STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion." *Bell v. City of E. Cleveland*, 125 F.3d 855 (6th Cir. 1997) (citing *Liberty Lobby*, 477 U.S. at 252).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *see also Adams v. Metiva*, 31 F.3d 375, 385 (6th Cir. 1994). The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do

more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present

specific facts showing that a genuine factual issue exists by "citing to particular parts of materials

in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine

dispute[.]" Fed. R. Civ. P. 56(c)(1); *see also Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th

Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's]

position will be insufficient; there must be evidence on which the jury could reasonably find for

the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must

support the assertion by . . . citing to particular parts of materials in the record, including

depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials." Fed. R. Civ. P. 56(c)(1)(A).

## III. DISCUSSION

Hallmark House moves for summary judgment only as to Count 3, Furlong's claim for

age discrimination. [DE 21]. Hallmark House first argues that Furlong cannot establish the fourth

element of a *prima facie* claim for age discrimination, *i.e.*, that Hallmark House replaced Furlong

with a younger person. [DE 21 at 104]. Furlong counters that the age differential in Furlong's

replacement is sufficient because there is direct evidence of discrimination because Furlong's

supervisor accused her of having "dementia." [DE 22 at 166]. Hallmark House further argues that

even if Furlong could establish a *prima facie* claim for age discrimination, no reasonable juror

could find that Hallmark House's stated reasons for termination were a pretext, and that the

termination was motivated by Furlong's age. [*Id*. at 106–9]. Furlong disputes the merits of

Hallmark House's reasons for her termination and argues that the timing of her written reprimands, her reporting of patient safety concerns, coupled with the merits of her performance would allow a jury to find Hallmark House's stated reasons to be pretextual. [DE 22 at 167.]

KRS § 344.040(1) states it is unlawful for an employer to "fail or refuse to hire, or to discharge any individual, or to otherwise discriminate against an individual . . . because of the individual's . . . age." Kentucky courts interpret the Kentucky Civil Rights Act consistent with the applicable federal anti-discrimination laws. *Williams v. Wal-Mart Stores, Inc*., 184 S.W.3d 492, 495 (Ky. 2005). Under federal law, Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, (1993). The Court analyzes Age Discrimination in Employment Act ("ADEA") cases, 29 U.S.C. §§ 621–634, under the same framework as employment discrimination cases under Title VII. *Grosjean v. First Energy Corp.*, 349 F.3d 332, 335 (6th Cir. 2003).

In a claim for disparate treatment, such as this case, "the plaintiff must establish that the adverse employment action was motivated, in part, by the plaintiff's protected-group status." *Lewis-Smith v. Western Ky. Univ.*, 85 F.Supp.3d 885, 897 (W.D. Ky. 2015). Without a discriminatory basis, an employer's discharge decision does not violate Title VII, even though the discharge may have been arbitrary, unfair, or for no reason at all. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 514 (1993) ("We have no authority to impose liability upon an employer for alleged discriminatory employment practices unless an appropriate factfinder determines,

according to proper procedures, *that the employer has unlawfully discriminated*.") (emphasis in original).

Under Kentucky law, "there are two paths for a plaintiff seeking to establish an age discrimination case. One path consists of direct evidence of discriminatory animus. Absent direct evidence of discrimination, Plaintiff must satisfy the burden-shifting test of *McDonnell Douglas* . . ." *Williams*, 184 S.W.3d at 495, citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The Court will address whether Furlong has established a claim for age discrimination under either path.

### a. Direct Evidence

The Court will thus first determine whether Furlong has presented direct evidence of discriminatory animus related to her age. When a plaintiff presents direct evidence of discrimination, an employer must rebut the plaintiff's case by a preponderance of the evidence. 3 EMP. DISCRIM. COORD., *Analysis of Federal Law* § 136:35.

Direct evidence of discrimination "'requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Geiger v. Tower Auto.,* 579 F.3d 614, 620 (quoting *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003)). In evaluating whether age-related statements show bias, courts consider "'(1) whether the statements were made by a decision-maker or by an agent within the scope of his employment; (2) whether the statements were related to the decision-making process; (3) whether the statements were more than merely vague, ambiguous or isolated remarks; and (4) whether they were made proximate in time to the act of termination.'" *Morgan v. N.Y. Life Ins. Co.,* 559 F.3d 425, 432 (6th Cir.2009) (quoting *Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 478 (6th Cir. 2002)).

Furlong cites as direct evidence Flannery's statement that Furlong "had dementia" at the October 2, 2017 meeting where Flannery had issued a disciplinary action for Furlong's failure to post an activities calendar and the two engaged in a verbal confrontation.[2] [DE 22 at 165–66]. Hallmark House discharged Furlong later that same month, on or about October 31.

Flannery's statement to Furlong that she had dementia is not direct evidence of age discrimination. While Flannery made the statement as an agent in the scope of her employment with Hallmark House, the statement itself is vague and requires an inference that it was intended to reference Furlong's age even though a person of any age can have dementia. Furlong recognizes that the statement is indirect evidence in her Response. [DE 22 at 165–66 ("Flannery . . . accused Kathleen of having 'dementia' because she has trouble remembering. Both Kathleen and Vanessa were certified to work in dementia care. The *implications* of Ms. Flanner's verbal abuse are clear . . .")(emphasis added)]. The statement is also a single incident after which Hallmark House immediately reprimanded Flannery and removed from her position as Furlong's supervisor. [DE 22 at 100, DE 21–3 at 131, DE 21–4 at 138]. Flannery also made the statement almost a month before Furlong was terminated. Given these facts, the statement is not sufficiently proximate to the act of termination to constitute direct evidence of discrimination. As a result, Furlong must present indirect evidence of evidence of discrimination sufficient to satisfy the *McDonnell Douglas* burden-shifting framework discussed below.

b.  Indirect/Circumstantial Evidence

Because there is no direct evidence of age discrimination, the Court must determine whether Furlong may present circumstantial evidence. Circumstantial evidence is "proof that does

---

[2] Furlong cites [DE 22–2, at page 44 of Ash's deposition], in support of the dementia comment. Yet Furlong fails to include this page of the Ash deposition in [DE 22–2]. In any event, Hallmark House does not dispute that Flannery made the comment [DE at 100] and the circumstances surrounding the comment do not appear in dispute.

not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Geiger*, 579 F.3d at 620 (quoting *Wexler*, 317 F.3d at 570. When a plaintiff seeks to prove intentional discrimination with circumstantial evidence, a three-step burden shifting framework applies, as established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Id.*

At the first step of the *McDonnell Douglas* framework, the plaintiff must present evidence sufficient to establish a *prima facie* case of discrimination. *Id*. at 802. At the second step, once a plaintiff meets his *prima facie* burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 803. If the defendant articulates such a reason, at the third step, the burden then shifts back to the plaintiff to show by a preponderance of the evidence that the proffered reason is pretext for unlawful discrimination—that is, "that the [employer's proffered] reason was false, *and* that discrimination was the real reason." *Hicks*, 509 U.S. at 515. (emphasis in original).

Under step one, to establish a *prima facie* case of age discrimination, Furlong must show she: "(1) was a member of a protected class, (2) was discharged, (3) was qualified for the position from which [she was] discharged, and (4) was replaced by a person outside the protected class." *Williams*, 184 S.W.3d at 496, citing *Kline v Tennessee Valley Auth*., 128 F.3d 337, 349 (6th Cir. 1997). To establish the fourth requirement for an age discrimination case, the claimant must show that she was replaced by someone substantially, or significantly, younger. *Stauble v. Montgomery Imports, LLC*, No. 2010-CA-000533-MR, 2011 WL 2119364, at *4 (Ky. App. May 27, 2011). The Sixth Circuit in *Grosjean*, 349 F.3d at 340, established a bright-line rule that in the absence of direct evidence that the employer considered age to be significant, an age difference of six years

or less between an employee and a replacement is not significant.[3]  The Court generally considers an age difference of ten years or more as "significant" for age discrimination.  *Id*. at 336.  However, "while Kentucky courts have cited *Grosjean* on numerous occasions, [Kentucky] ha[s] yet to adopt its strict rule than an age difference of less than six years is presumptively insignificant." *Williams v. Brown-Forman Corp*., No. 2017-CA-002043-MR, 2019 WL 1313411, at *6 (Ky. App. Mar. 22, 2019), citing *Williams*, 184 S.W.3d at 496.

Hallmark House does not dispute that Furlong meets the first three requirements of a *prima facie* discrimination claim: Furlong is a member of a protected class, Hallmark House terminated her employment, and she was qualified for the position from which she was terminated.  [DE 46 at 463–64].  Hallmark House argues, however, that Furlong has not established the fourth element: that she was replaced by a person substantially younger.  [DE 21 at 105].  Furlong argues she has met all four elements of a *prima facia* claim because there is direct evidence of age-related discrimination. [DE 22 at 165–66].  As discussed above, Furlong has not presented direct evidence of age discrimination.

Furlong's replacement was only five years younger at age 56.  [DE 21 at 106, DE 22 at 165].  Thus, the five-year difference between Furlong and her replacement is not significant to satisfy the fourth element of an age discrimination *prima facie* case absent direct evidence, which Furlong has not presented.  Furlong thus fails to establish a *prima facie* claim of age discrimination and the Court **GRANTS** Hallmark House's Motion for Partial Summary Judgment as to Count 3 of Furlong's Complaint.

---

[3] The *Grosjean* court provided an extensive review of precedent around the country, concluding that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Id*. at 340.

## IV.   CONCLUSION

Accordingly, for the stated reasons, and being otherwise sufficiently advised, **IT IS ORDERED** that Defendant Hallmark House's Motion for Partial Summary Judgment, [DE 21], is **GRANTED**.

Rebecca Grady Jennings, District Judge
United States District Court

October 25, 2019